The next case for argument is 18-1697, Bridge and Post v. Verizon. This is a case for argument 18-1695, Bridge and Post v. Verizon. The target identifier and that target identifier can then decode it and provide a specific targeted marketing information to you. You've got three patents here. Are we to, in effect, treat them all in the same way if we accept your argument, they all pass and if we don't, none of them do? Each one stands on its own. Yes. That's correct. In fact, in law, but in terms of the concepts. No, the concepts are different. So, for example, 594, let's use the example of my cell phone. So with the 594, I go out to the web. My persistent identifier, which is the phone, is then identified. Personalized information is extracted and located in the CR server. That information is then available for use by someone involved in direct marketing. That information, once it's developed, enables them to know where I am, what I'm doing, and it also enables them to provide targeted information. That had never been done before. Now, if we go to the next one, which is 747, that is a different technique. It talks about how you develop tags that would be useful for implementing this particular scheme. And, in fact, what happens is you get location information, time information, et cetera. You have it stored in a location where it can be encrypted, provided to a media outlet, and if they choose, they can then target you. But you have to have this tagging information in order to accomplish that. But the 747 is the only one of the three patents that actually claims, as I understand it, the inclusion of this information in the HTTP header. Correct. So that is a degree of specificity, it seems to me, that, for example, the 594 patent lacks. I don't see anything comparable to that in the 594. If you will, go to claim 15. Claim 15 in the 594 is a system patent. System claim, excuse me. And it provides sufficient detail, and it talks about providing the, you get the demographic information that's provided to the server computer in the form of user profile data, and the location is provided to the server computer in the form of data selected from the group consisting of zip codes. And then you have international codes, et cetera. Right, but that's all, it all has a very functional feel to it. It's describing a function without describing the specific mechanics of performing the function. But the specific mechanics are detailed. But they're detailed in the specification, perhaps, but they don't find their way into the claims. But let's go back to claim one. All right. So claim one says, hold on a second. Certainly doesn't refer to HTTP. I'm sorry? Certainly doesn't refer to HTTP. No, you don't have HTTP there. What you have is you retrieve a persistent identifier. Then you have to determine the network address, and then one or more characteristics. And then you have to retrieve historic information that's also on the Internet, and then you have to use that information to determine how many times in locations the particular persistent identifier is in use. And then once that's done, then you generate the user profile based upon the historic information. And then you store the user profile as a record that is then identified, that then identifies the user. Then you incorporate that into the user profile. And then once that's done, then you assign a group identifier. And after you've done that, the result is you then analyze and retrieve the device identifier, the historical information. And once you've done that, then you place the directed media, by the directed media component, to a particular website. And it's all software, right? No, it's software and hardware. You cannot do it unless you have a CR server. It's known hardware plus software. But it's known hardware used in a different way. No one has ever done that before. Is that a question of obviousness? Novelty? Not one-on-one? No, that would not be one-on-one. But in answer to your question, no, I don't believe it would be obvious. And the reason is because of the ultimate difficulty. No, but I mean, isn't it an obviousness question, which isn't before us? What's before us is patent eligibility. Right. Abstraction. Right. If you say that this is an improvement over the use of prior art systems, like cookies, then we aren't talking about an abstraction. You come clearly within Claim 1 of outs. And if you're saying that, well, we need to know more specifics, we have provided you specific detail here in Claim 1. And you know I apologize. I read Claim 15 from the different patent. If you look at Claim 15 in the 594, you'll see. I wasn't reading 15 from the 594. I'm going to grab my hands. Put my hands on it. It's on Appendix 64. Yeah, if you look at Claim 15, Column 13 in Appendix 64, that is not an abstraction. That provides detailed components about how you are to accomplish the result. Okay. You're into your rebuttal time. It's fine. Thank you. Good morning. May it please the Court. Deanne Maynard on behalf of Verizon. The patents at issue here take business practices that this Court already has held to be abstract and implement them with generic technology used in conventional ways. You know, I understand your argument with respect to the 594 and 314. I think it's 314. Yes, sir. I'm having more trouble with your argument as applied to the 747 because there, and that's the one that has the HTTP header. And the RID goes into it, gets encrypted and put into it. That sounds specific to me. That sounds like something that gets far beyond the generic functional sounding language that's used in the claims asserted from the other patents. Okay. So, one, Your Honor is correct that the 747 is the only one that has the issue that you're raising. But I don't think it changes the analysis, and here's why, for a number of reasons. One, the 747 is still directed to an abstract idea of, you know, transmitting user information using encrypted. But even if that's true, isn't it doing it in a very specific way? Isn't it saying, we could do this in any number of ways, and the other claims don't limit the ways that it can be done. We here are doing it by taking the information, encrypting it, and sticking it in a place where it's, at least by hypothesis, never been put before. Okay. Two points about that. One, obviously specificity is not enough to get you eligibility. This Court's held that. Nor is limiting an abstract idea to a particular technology. And then, perhaps more importantly to Your Honor's question, the specification makes clear that is a conventional use of the HTTP header. The specification makes clear that HTTP headers already contain user information, and they're just putting additional user information into blank space. If this were secured mail, and secured mail just taking the barcode and putting it in a blank space of the envelope, this is just taking that same abstract idea and putting it in a blank space in the HTTP header that's already used in that very way. And I can point Your Honor to the place in the specification where it talks about just the standard use of the HTTP header. So, looking at... So, which patent would you prefer, the 314 or 746? Either one. So, at the 746, appendix 80, column 9, lines 2 to 5, it talks about standard HTTP requests include various content fields, including headers and data fields, which accommodate incremental information from the network. So, the HTTP header is already used to add information. This is just adding... This is not changing it in kind. So, unlike... Isn't that an advantage of the patent? In other words, what the patent's... The cleverness here, if there is, is that we've taken the technology that's already out there. We don't have to make any big changes. But we're exploiting a feature that hasn't, again, by hypothesis, been exploited before and doing something that hasn't been done before by using already existing technology, the HTTP header. But implementing the abstract idea, which is the tagging. Tagging is the abstract idea. It has recognized and secured mail. Tagging and encrypting information about the sender is just an abstract idea. And this is just implementing that abstract idea on generic technology. It can be any kind of header, any kind of HTTP header, in a way that... In a conventional way, Judge Bryson. The way that HTTP headers... The specification makes clear HTTP headers already contain information about the user, like the user's browser. And that... So, that... And it already contains blank fields. If you look at APPX, this is like column 9, 40 to 42. The HTTP header also includes one or more extensible fields that are essentially blank, but can be used to store additional data. So, it's not... So, it's unlike ANCORA. So, he points to ANCORA, which came out after our red brief. We addressed it in our Rule 28J letter. But ANCORA is different, because ANCORA is using the BIOS in a way that the BIOS has never been used before to improve the functioning of the computer itself. So, those are two distinct differences between what's going on here with the HTTP header, which the specification makes clear is just an ordinary, conventional use of the HTTP header, which is to put information about the user in it and transmit it along with the traffic, like the rest of the information that's already in the header, to go along as a tag, just to implement the abstract idea from secured mail. ANCORA uses the BIOS in a way that the BIOS has, the court concluded, not been used before to include information unlike, of a different kind than the BIOS has ever been used before. This is the same kind... This is using the HTTP header to carry the same kind of information the HTTP header already is used to carry. It's not coming up with any new way, unconventional way of doing it. It's just implementing the abstract idea using conventional technology. It's like, take secured mail and do it on internet traffic. That's it. Even if it is a new, clever place and it hasn't been put there before, a new, clever idea isn't enough to get you out of abstract ineligibility. If all you're doing is implementing the abstract idea, which tagging is... If it's new and clever, it probably isn't conventional routine and well-known. No, I think there's a difference between the two, Your Honor. One is it's a new idea to tag the information. Secured mail could have been a new idea. The barcodes, putting the barcodes and all that could be a new idea, could be beneficial in some way. But it doesn't make the use of those things unconventional. The specification makes clear that the same kind of information is already carried in the HTTP header, and they're just adding new information to it. So new information of the same kind. Would your answer be different if, in fact, no one had actually put this kind of information in an HTTP header before? It was sitting there, unused, and this patent says, we've got a use for it, stick it in. Would that render it no longer an abstract idea? I don't know, Your Honor, because I still go back to secured mail. And if you say, like, if the claim's in secured mail, I'll have to... and stick the barcode on a blank spot on the envelope. Would you have thought that that took it out of... from ineligibility to eligibility? I don't think so. And this is no different than that. Empty space in the HTTP header. But I do think it does help us that the specification makes clear that it already carries information about the user's browser in it, including information about the user is already flowing with the traffic. And so they make an idea that they intercept, and they make assertions that somehow they're rerouting the traffic, but they're not rerouting the traffic. The traffic is going the same way it always goes, from the user's request on conventional technology through a conventional router. And that's another thing. It can be any router. It's through the router to the content provider. The traffic just goes right through that, and the HTTP header is just traveling with that in the ordinary way, and they've just proposed adding additional information to that header of the same ilk that's already there. And that is just implementing the abstract idea on generic technology in a conventional way, which is not enough to make it patent eligible. I'm happy to answer additional questions about that, or you still look unsatisfied. I can point you to the... No, I didn't mean to give any indication of lack of satisfaction. I appreciate your answer. Would your honors like me to address any questions about the other? I mean, the 594 patent is just targeted marketing, and this court already held the same concepts to be abstract and intellectual ventures. And as Judge Lurie pointed out, adding the additional abstract idea that uses a persistent identifier, which is a known thing, to that doesn't change it. And you see the 314 is falling into the same category? The 314 is, I think, the abstract idea from secured mail. And so all the things that I said about the 747 patent apply to the 314, except it doesn't, as your honor recognized, even claim the tagging into the HTTP header. So the 314 is just like secured mail. It's like the internet request goes, you tag user information onto the request, and you encrypt it. The technology can be any off-the-shelf, standard off-the-shelf components, any technology just used to send. There's nothing special about the ID. It can be any ID, including a MAC ID. The fact that they propose to take, in some claims, to take different IDs and add them together, that idea was in secured mail, too. There's nothing to take it out of the abstract world, and there's nothing unconventional about it, the way that they've implemented it, in either, I think, the 314 or the 747 patents. So basically the whole discussion that I had with you about the, they're not changing the way the traffic goes. It goes in the same exact way. It's just really take secured mail, and encrypt some information about the sender, and have it flow along with the mail. So you're saying the 594 and the 314 is all for sure from the 747? Yes, if you agree with us that it's 747. I think that I would separate them differently than that. So I think that the abstract idea in the 594 patent is the abstract idea from intellectual ventures. It's directed marketing. It's like collecting user makes a request. Which of the intellectual ventures? The one in 792. The one in 792. Okay. So it's not the XML one, but the one about putting up website content  I mean, it's just gathering, collecting information about the user, and then serving up targeted ads to them. There's nothing claimed special there. They don't claim to have invented any of the technology. They don't claim to have invented any of the technology in any of these patents. So then I would say that's on that, and then the 314 and the 747 patent, they are the abstract idea from secured mail, which is just taking information about the sender, encrypting some information into it, and then sending information in response to that, and that they implement that with generic technology in conventional ways. And then we've already had the discussion about why I think that using the HTTP header is just the conventional use of the HTTP header, and narrowing it down to a specific detail like that doesn't save it from being abstract. We would request that you affirm. Thank you. Let's start again with the 594, which if counsel says it's not at all unique, the reality is it is, in fact, unique. It is the first time where you are able to create a profile from the network, not from the device. This is all on the network side. And the reason that's important is twofold. One, anonymity. Two, privacy. So this is all being done on the network side, and it does not include personal information, which, again, is an improvement over what had been done before. And since it can only be created by the network, the user is not involved in that process. And using the identifier for that approach creates the system that we believe is unique. You heard counsel say that this is just like using a stamp in an envelope. It is not. A barcode. A barcode. It's not, because you can't use a barcode on the Internet. You have to be able to track some device in order to be able to identify what it is you want to target for that individual. That simply cannot be done in a conventional way. What was done here was unique because you can track the individual device, the individual device holder, wherever that person is, using whatever access point. Now, you asked the question at the outset about, is this just software? I said, no, it's hardware and software. But this is no different than what happened in DDR. It's no different. This is a solution that allows you to market in ways that could never be done before. It's easy to say, oh, everybody knows marketing. Well, that may be true, but you cannot market on the Internet one-to-one if you want to find out what a person is doing everywhere they go. It simply cannot be done. Thank you. We thank both sides. The case is submitted.